UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20550-CR-ALTONAGA(s)

UNITED STATES OF AMERICA

vs.

PAULO BEREJUK,
        a/k/a "Pablo Berejuk,"
        a/k/a "Paolo Berejuk,"

            Defendant.
_____/

## FACTUAL PROFFER IN SUPPORT OF GUILTY PLEA

The United States and Defendant Paulo Berejuk ("BEREJUK") agree that had this matter proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt:

1.      Beginning in and around 2007 to August 6, 2013, in Miami, Florida, and elsewhere, BEREJUK, a black market source of supply distributed testosterone and human growth hormone to three confidential sources (hereinafter "CS1," "CS2," and "CS3"). BEREJUK is not a licensed medical professional and does not possess Drug Enforcement Administration (hereinafter "DEA") registration number which allows him to sell, dispense, prescribe, or manufacture a controlled substance.

2.      CS1 advised law enforcement that BEREJUK was CS1's first source of supply of Schedule III controlled substances. CS1 advised that he/she was partners with a doctor in Miami-Dade County, operating an anti-aging clinic. This doctor, however, had lost his doctor's license after having been convicted for a federal felony offense. In 2007, this particular doctor introduced CS1 to his source for testosterone, and other Scheduled III controlled substances,

which was BEREJUK. CS1 started frequenting BEREJUK's home in southwest Miami-Dade County, where BEREJUK manufactured controlled substances in the residence's garage. According to CS1, BEREJUK had considerable knowledge of chemistry, and was capable of manufacturing controlled substances out of raw materials. CS1 began purchasing testosterone and human growth hormone from BEREJUK in 2007, until 2011.

3.     CS2 advised DEA agents about his participation with CS1, co-conspirator Jorge Velazquez (hereinafter "Velazquez"), and BEREJUK in the distribution of testosterone and human growth hormone. According to CS2, he/she began working for CS1 at one of CS1's clinics in Miami-Dade County in approximately December 2009. CS2 delivered testosterone to the homes of CS1's clients. On at least one occasion CS1 sent CS2 to BEREJUK's Kendall-area home to pick up testosterone. CS1 told CS2 that BEREJUK was one of CS1's sources of supply. CS2 picked up a two day supply of testosterone from BEREJUK; the testosterone was contained in glass vials that had a brand name written on them, the quantity in milliliters, the name of a company, but not the name of an actual patient. BEREJUK told CS2 that he was a chemist, had a lab for making "meds," and that he had the machinery to make the "meds."

4.     CS2 advised that CS2 and CS1 ordered their medication, specifically testosterone and human growth hormone, from BEREJUK via telephone calls and/or text messages. An examination of the text messages from CS2's cellular telephone contained numerous text message orders ranging from October 26, 2011 to March 4, 2013.

5.     CS3 advised agents that he/she made deliveries of controlled substances to customers of Velazquez's business, Boca Body located in Coral Gables, Florida. CS3 told agents that he/she started working for Velazquez in 2012 as a deliveryman. CS3 advised that Velazquez was obtaining testosterone from CS1, who was getting the testosterone from a person named

"PAOLO" or "PABLO." CS3 learned that at some point CS1 introduced Velazquez to PAOLO, who then became Velazquez's source of supply for testosterone and other controlled substances. Velazquez would order 10-15 different types or brands of testosterone from PAOLO and would routinely write a check for $1500, up to $3,000 in payment to PAOLO. These checks were written on the Boca Body account at International Finance Bank ("IFB"), among others, and signed by Velazquez.   An examination of the checks from Velazquez's Boca Body account revealed checks payable to BEREJUK in amounts ranging from $1,500 to $3,000.

6.     CS3 related to agents that CS3 only picked up testosterone on just one occasion in 2012 from PAOLO. CS3 was able to identify a photo of BEREJUK from a spread of 6 photographs, as PAOLO, the person that CS3 obtained testosterone from on that one occasion.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: ___12/18/14___      By: _____
                              MICHAEL P. SULLIVAN
                              ASSISTANT UNITED STATES ATTORNEY

Date: ___12/18/14___      By: _____
                              SHARAD A. MOTIANI
                              ASSISTANT UNITED STATES ATTORNEY

Date: ___12-18-14___      By: _____
                              ROBERT BARRAR, Esq.
                              ATTORNEY FOR DEFENDANT

Date: ___12-18-14___      By: _____
                              PAULO BEREJUK
                              DEFENDANT

3